UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARK MYERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:11-CV-1273 (CEJ) |
| ) | |
| CASINO QUEEN, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendant Casino Queen, Inc., to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2), Fed.R.Civ.P. Plaintiff Mark Myers has filed a response in opposition to the motion and the issues are fully briefed.

### I.   Background

Plaintiff Mark Myers was robbed and assaulted at his home in St. Louis County, Missouri by two men who allegedly followed him from the Casino Queen gambling establishment in East St. Louis, Illinois. Plaintiff asserts that the defendant's security cameras showed the two men "openly stalking" him at the casino and waiting in the parking lot while he got into a taxicab. In the complaint, plaintiff claims that the defendant was negligent in the following respects: failing to provide adequate security; continuing to serve plaintiff alcoholic beverages after he was visibly intoxicated; failing to either eject or warn plaintiff about the two suspicious men following him around in the casino; failing to provide plaintiff a secure means of transport from the casino; and failing to warn plaintiff of the dangers of taking his gambling winnings in cash.

Plaintiff initiated this action in the Circuit Court of St. Louis County. Defendant removed, asserting jurisdiction based on diversity of citizenship.

II.  **Discussion**

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that personal jurisdiction exists by pleading facts sufficient to support a reasonable inference that the defendant can be subjected to jurisdiction within the state. K-V Pharm. Co. v. J. Uriach & CIA, S.A., 648 F.3d 588, 591-92 (8th Cir. 2011) (citations omitted); Steinbuch v. Cutler, 518 F.3d 580, 585 (8th Cir. 2008). Although the evidentiary showing required at the *prima facie* stage is minimal, the showing must be tested, not by the pleadings alone, but by the affidavits and exhibits supporting or opposing the motion. K-V Pharm., 648 F.3d at 592 (quotations and citations omitted). Where the court does not hold a hearing but relies on pleadings and affidavits, the court must look at the facts in the light most favorable to the nonmoving party and resolve all factual conflicts in that party's favor. Pangaea, Inc. v. Flying Burrito, LLC, 647 F.3d 741, 745 (8th Cir. 2011). Nevertheless, the party seeking to establish the court's *in personam* jurisdiction bears the burden of proof and the burden does not shift to the party challenging jurisdiction. Viasystems, Inc. v. EBM-Pabst St. Georgen GmbH & Co., KG, 646 F.3d 589, 592 (8th Cir. 2011) (quotations and citations omitted).

Personal jurisdiction can be general or specific. Id. at 593. "A court may assert general jurisdiction over foreign (sister-state or foreign country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851 (2011); Miller v. Nippon

Carbon Co., 528 F.3d 1087, 1091 (8th Cir. 2008) (general jurisdiction refers to "the power of a state to adjudicate any cause of action involving a particular defendant, regardless of where the cause of action arose"). "Specific jurisdiction refers to jurisdiction over causes of action arising from or related to a defendant's actions within the forum state," id. (quotation marks and citation omitted), and "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop, 131 S. Ct. at 2851 (quoting von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L. Rev. 1121, 1136 (1966)). Plaintiff asserts that personal jurisdiction exists under the principles of general and specific jurisdiction.

### General Jurisdiction

General jurisdiction can be asserted only insofar as it is authorized by state law and permitted by the Due Process Clause. Viasystems, Inc., 646 F.3d at 595. Under Missouri law, general jurisdiction is properly asserted over an out-of-state corporation when "(1) the corporation was served within [the] state; and (2) the foreign corporation was doing substantial business within [the] state." Fulton v. The Bunker Extreme, Inc., 343 S.W.3d 9, 13 (Mo. Ct. App. 2011) (citing Wineteer v. Vietnam Helicopter Pilots Ass'n, 121 S.W.3d 277, 282 (Mo. Ct. App. 2003)). In this case, service was made upon defendant in Illinois. See Notice of Removal, Exh. 1 [Doc. #1-1 at 13-18]. Plaintiff thus fails to establish the first requirement. With respect to the second requirement, the Missouri Court of Appeals has previously determined that defendant's activities within Missouri are insufficient to establish that defendant does "substantial business" here. See Wortham v. Casino Queen, Inc., No. ED18723, Unpublished Memorandum, (Mo. Ct. App. Apr. 15, 2003) Def. Mem. in Support of

Motion, Ex. B [Doc. #8-2]. Plaintiff has failed to establish that the exercise of general jurisdiction over defendant satisfies state law.

### Specific Jurisdiction

A federal court may exercise specific personal jurisdiction in a diversity suit only if the exercise is authorized by the forum state's long-arm statute. Viasystems, 646 F.3d at 593. In Missouri, specific personal jurisdiction is authorized only to the extent that "the [cause of] action arose out of an activity covered by [Missouri's] long-arm statute." Id. (alterations in original) (quoting Conway v. Royalite Plastics, Ltd., 12 S.W.3d 314, 318 (Mo. 2000)). The long-arm statute's categories are construed broadly, such that if a defendant commits one of the acts specified in the statute, the statute will be interpreted "to provide for jurisdiction . . . to the full extent permitted by the [D]ue [P]rocess [C]lause." Id. (alterations in original, ellipses added) (quoting State ex rel. Metal Serv. Ctr. of Georgia, Inc. v. Gaertner, 677 S.W.2d 325, 327 (Mo. 1984)).

Missouri's long-arm statute authorizes personal jurisdiction over a defendant who commits a tort within the state. Mo.Rev.Stat. § 506.500.1(3). If the tortious act is committed outside of Missouri, the long-arm statute will apply so long as the act "produces actionable consequences" in Missouri. Noble v. Shawnee Gun Shop, Inc., 316 S.W.3d 364, 371 (Mo. Ct. App. 2010) (citing Capitol Indem. Corp. v. Citizens Nat'l Bank of Fort Scott, 8 S.W.3d 893, 903 (Mo. Ct. App. 2000)).

Defendant argues that an "extra-territorial act" gives rise to long-arm jurisdiction only where a defendant "set in motion some course of action . . . deliberately designed to move into Missouri and injure the plaintiff." Capitol Indem. Corp., 8 S.W.3d at 903. This is a matter of some debate in Missouri: "Some courts

have required the Missouri consequences to have been 'intentionally directed' toward Missouri, while others have not." Noble, 316 S.W.3d at 371 (citations omitted). In Noble, the parents of two murder victims brought a negligence action in Missouri against a Kansas gun shop where the murderer had purchased the ammunition used in the killings. The trial court dismissed the action for lack of personal jurisdiction, finding that the plaintiffs' claims did not arise from a tortious act committed in Missouri as required by the long-arm statute. Id. at 368. The Missouri Court of Appeals reversed:

> The trial court dismissed the action based on its belief that any extra-territorial tort having consequences in Missouri "must have been deliberately designed to move into Missouri and injure the plaintiff." We hold that for actions where the tort alleged is negligence, *at least in the context of a product having been placed in the stream of commerce* and in which the defendant is regularly conducting business with Missouri residents, this requirement does not apply.

Id. at 372 (footnote omitted) (emphasis added). The court found that the plaintiffs had alleged sufficient facts "to establish that Gun Shop reasonably knew or should have known that its allegedly negligent sale to [the shooter] could have effects in Missouri." Id. In support of this finding, the court specifically noted that the defendant "advertised to Missouri residents, sold products to Missouri residents, and encouraged Missouri residents to patronize its shooting range." Id. Further, citing to Hollinger v. Sifers, 122 S.W.3d 112, 117 (Mo. Ct. App. 2003), the court noted that the "showing required of . . . plaintiffs is less stringent when a product is placed in the stream of commerce than when the non-resident defendant is engaged in providing a service." Id. at 371.

In Hollinger, the plaintiff, a Missouri resident underwent surgery in Kansas and later sued the defendant physician in a Missouri court after she developed

-5-

complications.  The plaintiff alleged that the defendant had advertised his services in Missouri and that he was therefore subject to personal jurisdiction in Missouri under the long-arm statute.  The trial court dismissed the action for lack of personal jurisdiction.  In affirming the dismissal, the Missouri Court of Appeals wrote: "Where a non-resident defendant is engaged in providing a service, as opposed to providing a product through the stream of commerce, the contact requirements for long-arm jurisdiction are more stringent."  Hollinger, 122 S.W.3d at 117.

The instant case is like Noble, in that plaintiff's harm arises from defendant's alleged negligence.  Unlike Noble, however, the tortious act in this case does not arise from a "product having been placed in the stream of commerce."  Instead, the circumstances of the instant case are more akin to those in Hollinger in that the allegations establish that the defendant is engaged in providing a service in the form of entertainment, not a product.  Here, defendant provides a venue in which patrons partake in games of chance, eat, and watch entertainment---all activities that are bound to the premises.  That patrons may carry away gambling winnings, leftovers, or a recording of one of the musical acts does not transform defendant's actions in providing a venue into actions that introduce products into the stream of commerce.  Thus, the Court concludes that the Missouri long-arm statute does not subject the defendant to personal jurisdiction in this case.

Even if plaintiff could satisfy the requirements of the long-arm statute, jurisdiction can be asserted only if it comports with the strictures of the Due Process Clause.  Viasystems, Inc., 646 F.3d at 594 (citing World–Wide Volkswagen Corp v. Woodson, 444 U.S. 286, 291 (1980)).  The touchstone of the due process analysis is "whether the defendant has sufficient 'minimum contacts with [the forum state] such

that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. at 593 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). "The fundamental inquiry is whether the defendant has 'purposefully availed' itself of the 'benefits and protections' of the forum state to such a degree that it 'should reasonably anticipate being haled into court there.'" Id. (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 482 (1985) and World–Wide Volkswagen, 444 U.S. at 297). Specific jurisdiction is proper "only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state, meaning that the defendant purposely directed its activities at the forum state and the claim arose out of or relates to those activities." Johnson v. Arden, 614 F.3d 785, 795 (8th Cir. 2010) (quoting Steinbuch v. Cutler, 518 F.3d 580, 586 (8th Cir. 2008)).

The evidence pertinent to the issue of minimum contacts is as follows:

Defendant is an Illinois corporation with its principal place of business in Illinois; it is licensed to facilitate gambling only within Illinois and it does not facilitate gambling within Missouri. Defendant does not maintain offices or other premises within Missouri. It does not have a registered agent within Missouri, nor does it own real estate or pay taxes in Missouri. Defendant airs commercials on television and on the radio and uses direct mail advertising and solicitation directed to Missouri residents. In addition, defendant places print advertising in Missouri publications and displays advertisements in Missouri venues, including billboards, hotels, and sports venues. Defendant also maintains a website that provides directions to the casino from various Missouri locales and allows users to book hotel reservations through the website; site users may also register for online "member accounts," allowing them to receive special offers, invitations to special events, and to check their win/loss statements. Defendant

provides a shuttle service between the casino and several Missouri venues.  Similarly, Busch Stadium, located in St. Louis, provides a venue called the "Casino Queen Party Porch."  Finally, the defendant made a donation to Voters for Good Government, a political organization opposed to repealing Missouri's gambling loss limits.

Plaintiff states in his affidavit that he has encountered defendant's advertisements in Missouri in multiple formats.  Plaintiff contends that defendant's purpose in these activities is to draw Missouri residents to defendant's casino in Illinois, where they are subjected to defendant's alleged negligence, the effects of which some of them suffer in Missouri.

The Eighth Circuit has established five factors to consider in evaluating personal jurisdiction: "(1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts; (3) the relationship of the cause of action to the contacts; (4) the interest of [the forum state] in providing a forum for its residents; and (5) the convenience or inconvenience to the parties." K-V Pharm., 648 F.3d at 592 (alteration in original).  The first three factors are the primary factors; the remaining two are secondary factors, Johnson v. Arden, 614 F.3d at 794, and cannot make up for the absence of minimum contacts. Digi–Tel Holdings, Inc. v. Proteq Telecomm., Ltd., 89 F.3d 519, 525 (8th Cir. 1996).

The first two factors that must be examined---the nature, quality, and quantity of defendant's contacts with Missouri---tend to support the exercise of jurisdiction over defendant.  Defendant advertises extensively in Missouri through multiple modalities and it provides Missouri residents shuttle service to its casino.  Nevertheless, plaintiff cannot satisfy the crucial third factor because his negligence claim does not arise from defendant's advertisements or shuttle service.  Thus, he has failed to show a

relationship between his claims and defendant's activities in Missouri.[1]  See Pearrow v. National Life & Acc. Ins. Co., 703 F.2d 1067, 1069 (8th Cir. 1983) (plaintiff in negligence action could not establish personal jurisdiction based on fact that defendant mailed her solicitation brochures because the connection to her cause of action was too tenuous); Buckley v. Sheraton Overseas Mgmt. Corp., No. 4:09CV962 (JCH) (E.D. Mo. May 20, 2010) (plaintiff's negligence claim arising from injury at resort in Mexico not sufficiently related to defendant's website so as to establish personal jurisdiction).

Plaintiff also argues that the perpetrators of the robbery were attracted to the casino by defendant's advertisements in Missouri.  First, he presents no evidence in support of this contention.  More importantly, however, is that what the defendant advertises is the opportunity to win at games of chance---not the opportunity to victimize its patrons.  Under plaintiff's logic, every business that advertised outside its resident state would be exposed to personal jurisdiction for the criminal acts of third-parties in Missouri.

Defendant's alleged negligence in failing to protect plaintiff from the criminal actions of third-parties is not "uniquely or expressly aimed at the forum state" or "performed for the very purpose of having [its] consequences felt in the forum state," such that defendant should "have clear notice that it is subject to suit" in Missouri. Viasystems, Inc., 646 F.3d at 594-95 (quoting Johnson, 614 F.3d at 796; Dakota

---

[1]Plaintiff cites to Freeman v. Purple Crackle Club, Inc., 2005 WL 2258818 (E.D. Mo. Sept. 16, 2005), in support of his assertion of personal jurisdiction.  The plaintiff in Freeman was shot in defendant's club located in Illinois.  The club advertised in Missouri and employed a shuttle service to transport Missouri residents to the club in Illinois.  Based on these acts, the district court found that defendant "purposefully availed itself of the privilege of conducting activities within Missouri" and was subject to personal jurisdiction in Missouri.  Unaddressed by the court, however, was the connection between the plaintiff's claims and the club's activities in Missouri.  The ruling in Freeman does not aid in the analysis here.

Indus. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1391 (8th Cir. 1991); and World-Wide Volkswagen Corp., 444 U.S. at 297). The exercise of personal jurisdiction over the defendant in Missouri would not comport with the requirements of due process.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss for lack of personal jurisdiction [Doc. #7] is **granted**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of December, 2011.